UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CHAD S.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CIVIL NO. 1:18cv298 |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Insurance (SSI), as provided for in the Social Security Act. 42 U.S.C. § 423(a), § 1382c(a)(3). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act

through September 30, 2015.

2. The claimant has not engaged in substantial gainful activity since April 23, 2013, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3. The claimant has the following severe impairments: lumbar degenerative disc disease; bilateral trochanteric bursitis; degenerative changes in the right knee; bilateral cubital syndrome/carpal tunnel syndrome; Duspuytren's contracture of the left hand; osteoarthritis of the left wrist; PTSD; alcohol use disorder; and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally operate hand controls bilaterally; can frequently handle, finger, and feel bilaterally; can occasionally climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; limited to performing simple, routine tasks; and limited to tolerating occasional changes in a routine work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 21, 1968 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404, 1569(a), 416.969,

3

and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 23, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12 - 20).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on March 11, 2019. On April 9, 2019, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature

of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff allegedly suffers from the following mental health impairments: post-traumatic stress disorder; major depressive disorder; and alcohol use disorder. The psychological consultative examination confirmed these impairments and considered the basis for the PTSD to be rooted in Plaintiff's military service.

Plaintiff's lumbar degenerative disk disease is demonstrated by MRI which shows disk and facet degeneration and neuroforaminal stenosis; bilateral trochanteric bursitis; tendinosis in left hip; degenerative changes in the right knee; post left Achilles tendon repair; plantar fibromatosis; bilateral cubital tunnel syndrome; severe degeneration in the radiocarpal joint; bilateral carpal tunnel syndrome; multiple ganglion cyst bilateral hands; left Dupuytren's contracture; osteoarthritis of the left hand; hyperlipidemia; hypertension; history of bladder cancer post-surgery and bacillus Calmette-Guerin instillation.

In support of remand, Plaintiff first argues that the ALJ failed to include supported limitations in the RFC finding. Plaintiff claims that the RFC did not fully account for his limitations in concentration, persistence and pace. Plaintiff also claims that the ALJ's analysis of his handling and fingering limitations is erroneous.

The RFC is the most a claimant can still do despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). Here, the ALJ found that Plaintiff was capable of performing work at the light exertional level with the following additional limitations: he can occasionally operate hand controls bilaterally; can frequently handle, finger, and feel bilaterally; can occasionally climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; he was limited to performing simple, routine tasks; and, limited to

5

tolerating occasional changes in a work setting (Tr. 15).

At step three, the ALJ found that Plaintiff had moderate limitations with regard to concentrating, persisting, or maintaining pace (Tr. 14). Citing Plaintiff's Adult Function Report, the ALJ discussed that Plaintiff was able to prepare meals, grocery shop, and handle finances independently (Tr. 14, 272-273). "These activities necessarily require some capacity to concentrate, persist, and maintain pace" (Tr. 14). The ALJ further explained that "[m]ental status examinations showed largely benign findings, which support up to moderate limitation in this area" (Tr. 14). In support of this finding, the ALJ cited the mental status examination performed on May 29, 2015, by Dr. Bacchus; the mental status examination performed on November 18, 2011, at the Fort Wayne VA Medical Center; and the examination performed on November 28, 2016, at the Fort Wayne VA Medical Center (Tr. 14, 614, 724, 1121).

In the RFC analysis, the ALJ acknowledged Plaintiff's alleged difficulties with concentration (Tr. 15, 275). The ALJ concluded that the evidence partially supported Plaintiff's allegations, noting that "physical and mental status examinations showed largely benign findings," which suggested "that treatment was effective in controlling symptoms" (Tr. 19).

The ALJ discussed evidence of record supporting the RFC assessment and showing that Plaintiff did not require limitations beyond those included in the RFC. The ALJ addressed the psychological consultative examination, performed by Dr. Scherbinski on May 29, 2015 (Tr. 17). As the ALJ noted, "[e]ven during the psychological consultative evaluation, the claimant maintained appropriate eye contact, was responsive to questions and cooperative, and displayed appropriate speech, attention, concentration, orientation, and affect. He demonstrated generally average long-term memory skills and below average intermediate memory/delayed recall and

short-term memory skills" (Tr. 17, 607, 609). The ALJ assigned great weight to Dr. Scherbinski's opinion (Tr. 17).

The ALJ assigned partial weight to the opinions of the State agency psychological consultants, who found that Plaintiff was able to perform semi-skilled work on a sustained basis without special considerations (Tr. 17, 86, 99, 115, 129). Explaining why he assigned limitations that exceeded the findings of the State agency psychological consultants, the ALJ stated, "[o]verall, the medical record, which documents some episodes of panic attacks and anxiety, supports greater limitations in understanding, remembering, or applying information, and concentration, persistence, and pace. In light of anxiety and traumatic flashbacks, the undersigned further limits the claimant to simple, routine tasks and occasional workplace changes" (Tr. 18). The ALJ subsequently explained that these limitations in the RFC also accommodated Plaintiff's depression, alcohol use, and moderate mental limitations (Tr. 19).

Plaintiff asserts that the limitations included in the RFC to address Plaintiff's difficulties concentrating, persisting, or maintaining pace were insufficient. Significantly, however, Plaintiff fails to specify what – if any – additional limitations he required; and, it was his burden to do so *See Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (finding that a skeletal argument does not preserve a claim). As in *Prater v. Saul*, No 19-2263 (7th Cir. Jan. 15, 2020), Plaintiff has not argued that the ALJ's RFC findings lack medical support. Also, as in *Prater*, Plaintiff has not identified any additional limitations he believes should be incorporated in the RFC and fails to cite any evidence that he requires a more restrictive RFC.

The ALJ sufficiently explained how he accommodated Plaintiff's mental impairments in

7

the RFC. The ALJ discussed evidence showing that further limitations were not supported by the record, including Dr. Scherbinski's observation that, upon examination, Plaintiff was able to maintain concentration (Tr. 17, 607). Thus remand is not warranted on this issue.

Citing medical evidence of record, the ALJ discussed Plaintiff's hand impairments, including bilateral cubital syndrome/carpal tunnel syndrome (Tr. 752); Dupuytren's contracture of the left hand (Tr. 1154); and, osteoarthritis of the left wrist (Tr. 1154). The RFC included multiple limitations applicable to Plaintiff's use of his hands and fingers: light work ("lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"); occasional operation of hand controls bilaterally; and, frequent handling, fingering, and feeling bilaterally (Tr. 15). 20 C.F.R. §§ 404.1567(b), 416.967(b). Plaintiff's challenge on this point addresses only the last of these limitations.

The ALJ explained that limiting Plaintiff to light work addressed that Plaintiff could not perform heavy lifting "in light of bilateral hand and wrist pain" (Tr. 18). 20 C.F.R. §§ 404.1567(b), 416.967(b) (light work requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"). "Lifting and carrying heavy objects and performing postural and manipulative activities are particularly problematic for the claimant in light of pain and weakness" (Tr. 19). Additionally, the ALJ noted the results of Plaintiff's consultative medical examination, performed on May 29, 2015, by Dr. Bacchus (Tr. 16). Upon examination, Plaintiff demonstrated 3-4/5 grip strength in the left hand and 5/5 grip strength in the right hand (Tr. 16, 614, 618).

In addition to the medical evidence relevant to Plaintiff's hand impairments, the ALJ discussed Plaintiff's activities, which "rebutt[ed] allegations of debilitating symptoms" (Tr. 17).

8

These activities included the following (Tr. 17): caring for his personal hygiene independently (Tr. 271); preparing meals (Tr. 272); doing the laundry (Tr. 272); grocery shopping (Tr. 273); handling finances independently (Tr. 273); watching television (Tr. 274); visiting friends (Tr. 274); using Facebook (Tr. 274); mushroom hunting (Tr. 1130); golfing (Tr. 1130); fishing (Tr. 1130); and, doing volunteer work (Tr. 431).

Plaintiff asserts that the handling and fingering limitations should have been no more than "occasional". Yet, again, Plaintiff does not argue that the ALJ's findings lack medical support. Nor does he cite any specific evidence in support of his vague arguments. Notably, Plaintiff has failed to file a reply addressing his evidentiary deficits, even after the Commissioner's response brief pointed out the deficiencies.

Accordingly, as the ALJ addressed Plaintiff's hand and finger limitations, discussing both medical evidence of record and evidence of activities that Plaintiff was able to perform with his hands and fingers during the relevant period, this Court finds that substantial evidence supports the ALJ's RFC assessment. Thus, there is no basis for remand on this issue.

Next, Plaintiff argues that the ALJ's Step Five finding about the existence of other jobs in significant number in the national economy is not supported by substantial evidence. At Step Five, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform (Tr. 19-21). Based on the vocational expert's (VE's) testimony, the ALJ found that Plaintiff would be able to perform the following representative occupations: small parts assembler (DOT No. 706.684-022, 430,000 jobs nationally); inspector and hand packager (DOT No. 559.687-074, 74,000 jobs nationally); and, laundry worker (DOT No. 369.687-018, 51,000 jobs nationally) (Tr. 20, 34). Plaintiff asserts that substantial evidence did not support the

9

ALJ's Step Five finding because the VE appears to have used the equal distribution method.

"The [A]gency's regulations do not mandate a precise count of job numbers." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018); *see* 20 C.F.R. §§ 404.1560(c), 416.960(c). Further, the Agency has not promulgated regulations prescribing any particular methodology for VEs to use when estimating how many jobs exist in the national economy for a specific occupation. *See* 20 CFR §§ 404.1566(e), 416.966(e). "If the basis of the VE's conclusions is questioned at the hearing . . . then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702) to find out whether the purported expert's conclusions are reliable." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002).

At the hearing, in response to initial questioning from Plaintiff's counsel, the VE identified his statistical sources for job numbers: "[Job Browser] Pro SkillTRAN2 and United Statistical Publishing," "among other sources" (Tr. 38). Summarizing his methodology, the VE explained "if there are, in a census code, 20 DOT codes, they're just going to divide that by the total number. And then I think what one needs to do is to look at jobs that actually . . . still exist and not just accept that . . . percentage breakout on its face" (Tr. 38). The VE testified that he probably did modify the Job Browser Pro numbers for this reason (Tr. 39).

Plaintiff's counsel objected to the VE's methodology (Tr. 40). The ALJ sought clarification: "And just so I'm clear, so you're objecting to the methodology used because of [] simply dividing by the . . . number of DOT codes . . . from that larger category" (Tr. 41). Plaintiff's counsel then acknowledged that the methodology described by the VE was "a little more refined" because the VE did "weed out the technologically obsolete jobs" (Tr. 41). The ALJ persisted with questioning for the VE, asking if Job Browser Pro and United Statistical

Publishing were "commonly used sources . . . in the vocational arena for the – that type of data, those job numbers?" (Tr. 42). The VE replied, "Yes" (Tr. 42). Moreover, the VE stated that he had been "doing this for about over 20 years" (Tr. 43). The ALJ asked where Job Browser Pro and United Statistical Publishing sourced job numbers (Tr. 44). The VE replied, "I believe they're US Department of Labor numbers" (Tr. 44). The VE again explained the methodology as "simply divid[ing]" to extract specific codes from a larger category, but then following that with an elimination of "esoteric," nonexistent jobs (Tr. 44).

In his decision, the ALJ noted the objection of Plaintiff's counsel at the hearing, but found that the VE "adequately explained the methodology that he used to arrive at the job numbers that were offered" (Tr. 20).

> [The VE] also noted that the two main statistical sources that [he] used to arrive at the job numbers were commonly used among [VEs] in determining job numbers. Further, the [VE] testified that the numbers that he provided were estimates and that the jobs offered were only a representative sample of the jobs that could be performed with the limitations that were given. Accordingly, the undersigned accepts the [VE's] testimony as credible and reliable.

(Tr. 20).

On the issue of VE methodology, the Seventh Circuit has stated that "[w]e also recognize and underscore that VEs cannot be expected to formulate opinions with more confidence than imperfect data allows. Nor is it our place to enjoin the use of the equal distribution method." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). The Seventh Circuit also instructs that:

> Before accepting a VE's job-number estimate, the ALJ, when confronted by a claimant's challenge, must require the VE to offer a reasoned and principled explanation. At or after a hearing, the VE could support the approximation by, for example, drawing on knowledge of labor market conditions and occupational trends, gleaned from reviewing relevant data sources or from placing workers in jobs.

11

*Id*. The key is that a showing must be made that the estimate reasonably approximates the suitable jobs that exist for Plaintiff. While in the present case the ALJ questioned the VE about his methodology, nothing in the VE's answers assures this Court that his estimates are reliable for this particular plaintiff. Thus, out of an abundance of caution, the Court will remand on this issue.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for proceedings consistent with this Opinion.

Entered: February 18, 2020.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court